## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

KEVIN JONES,

      Petitioner,

v.                                   Case No. 3:19-cv-904-TJC-PDB

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

      Respondents.

_____

### ORDER

### I.   Status

Petitioner, an inmate of the Florida penal system, is proceeding on a pro se Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2254 (Doc. 1). He challenges a state court (Duval County, Florida) judgment of conviction for second degree murder. He is serving life imprisonment. Respondents filed a Response (Doc. 10) with exhibits (Docs. 10-1 to 10-44; "Resp. Ex."). Petitioner filed a Reply addressing Grounds One and Two (Doc. 11) with exhibits (Docs. 11-1 to 11-3). This case is ripe for review.[1]

---

[1] "In a habeas corpus proceeding, the burden is on the petitioner to establish the need for an evidentiary hearing." Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318 (11th Cir. 2016) (citing Chavez v. Sec'y Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011)). "In deciding whether to grant an evidentiary hearing, a federal court must

## II.      <u>Governing Legal Principles</u>

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal habeas corpus petition. <u>See</u> <u>Ledford v. Warden, Ga. Diagnostic & Classification Prison</u>, 818 F.3d 600, 642 (11th Cir. ne2016). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" <u>Id.</u> (quoting <u>Greene v. Fisher</u>, 565 U.S. 34, 38 (2011)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the petitioner's claims on the merits. <u>See</u> <u>Marshall v. Sec'y Fla. Dep't of Corr.</u>, 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue an opinion explaining its rationale for the state court's decision to qualify as an adjudication on the merits. <u>See</u> <u>Harrington v. Richter</u>, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation,

---

consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." <u>Schriro v. Landrigan</u>, 550 U.S. 465, 474 (2007) (citation omitted). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." <u>Id.</u> The Court finds that "further factual development" is unnecessary. <u>Turner v. Crosby</u>, 339 F.3d 1247, 1275 (11th Cir. 2003). Thus, an evidentiary hearing will not be conducted.

the federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning. But the State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018).

When a state court has adjudicated a petitioner's claims on the merits, a federal court cannot grant habeas relief unless the state court's adjudication of the claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(1), (2). A state court's factual findings are "presumed to be correct" unless rebutted "by clear and convincing evidence." Id. § 2254(e)(1).

AEDPA "imposes a highly deferential standard for evaluating state court rulings" and "demands that state-court decisions be given the benefit of the doubt." Renico v. Lett, 559 U.S. 766, 773 (2010) (internal quotation marks omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." Richter, 562 U.S. at 101 (internal quotation marks omitted). "It bears repeating that even a strong case for relief does not mean the state court's contrary

> conclusion was unreasonable." Id. [at 102] (citing
> Lockyer v. Andrade, 538 U.S. 63, 75 (2003)). The
> Supreme Court has repeatedly instructed lower federal
> courts that an unreasonable application of law requires
> more than mere error or even clear error. See, e.g.,
> Mitchell v. Esparza, 540 U.S. 12, 18 (2003); Lockyer,
> 538 U.S. at 75 ("The gloss of clear error fails to give
> proper deference to state courts by conflating error
> (even clear error) with unreasonableness."); Williams v.
> Taylor, 529 U.S. 362, 410 (2000) ("[A]n unreasonable
> application of federal law is different from an incorrect
> application of federal law.").

Bishop v. Warden, GDCP, 726 F.3d 1243, 1253-54 (11th Cir. 2013) (internal

citations modified).

## B. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants effective

assistance of counsel. That right is denied when a defense attorney's

performance falls below an objective standard of reasonableness and thereby

prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam)

(citing Wiggins v. Smith, 539 U.S. 510, 521 (2003); Strickland v. Washington,

466 U.S. 668, 687 (1984)). Courts employ a two-part test when reviewing

ineffective assistance of counsel claims. See Strickland, 466 U.S. at 687.

> To establish deficient performance, a person
> challenging a conviction must show that "counsel's
> representation fell below an objective standard of
> reasonableness." 466 U.S. at 688. A court considering
> a claim of ineffective assistance must apply a "strong
> presumption" that counsel's representation was
> within the "wide range" of reasonable professional
> assistance. Id. at 689. The challenger's burden is to

4

> show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." <u>Id.</u> at 687.
>
> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id.</u> at 694. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." <u>Id.</u> at 693. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." <u>Id.</u> at 687.

<u>Richter</u>, 562 U.S. at 104 (internal citations modified).

There is no "iron-clad rule requiring a court to tackle one prong of the <u>Strickland</u> test before the other." <u>Ward</u>, 592 F.3d at 1163. Both prongs of the two-part <u>Strickland</u> test must be satisfied to show a Sixth Amendment violation; thus, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." <u>Id.</u> (citing <u>Holladay v. Haley</u>, 209 F.3d 1243, 1248 (11th Cir. 2000)). "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." <u>Strickland</u>, 466 U.S. at 697.

A state court's adjudication of an ineffectiveness claim is afforded great deference.

> "[T]he standard for judging counsel's representation is a most deferential one." <u>Richter</u>, 562 U.S. at 105. But "[e]stablishing that a state court's application of <u>Strickland</u> was unreasonable under § 2254(d) is all the more difficult. The standards created by <u>Strickland</u> and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." <u>Id.</u> (citations and quotation marks omitted). "The question is not whether a federal court believes the state court's determination under the <u>Strickland</u> standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard," then a federal court may not disturb a state-court decision denying the claim. <u>Richter</u>, 562 U.S. at 105.

<u>Hittson v. GDCP Warden</u>, 759 F.3d 1210, 1248 (11th Cir. 2014) (internal citations modified). In other words, "[i]n addition to the deference to counsel's performance mandated by <u>Strickland</u>, the AEDPA adds another layer of deference--this one to a state court's decision--when we are considering whether to grant federal habeas relief from a state court's decision." <u>Rutherford v. Crosby</u>, 385 F.3d 1300, 1309 (11th Cir. 2004). As such, "[s]urmounting <u>Strickland</u>'s high bar is never an easy task." <u>Padilla v. Kentucky</u>, 559 U.S. 356, 371 (2010).

III.   **Analysis**

**A. Ground One**

Petitioner argues that his trial counsel was ineffective for failing to obtain a crime scene reconstruction expert to challenge the medical examiner's testimony relating to the victim's injuries and to show the testimony was inadmissible because it lacked a scientific basis. Doc. 1 at 5.  In his Reply, he argues that "trial counsel was ineffective for failing to consider and consult with an expert forensic pathologist to review the state's pathologist's report to testify consistently with the defense's theory of self defense." Doc. 11 at 7.[2]

Petitioner raised this claim in his postconviction proceedings pursuant to Florida Rule of Criminal Procedure 3.850. The state court denied the claim:

> Defendant first asserts counsel was ineffective for failing to retain an expert and challenge the testimony of State witness, Dr. Valerie Rao ("Dr. Rao"), with knife mark and fingernail mark comparisons. Defendant states counsel should have challenged Dr. Rao's ability to characterize and interpret the victim's injuries or should have shown the testimony was inadmissible under the Frye[] or Daubert standard because it lacked a scientific base.
>
> As a licensed physician since 1981 and a medical examiner for approximately twenty-five years, Dr. Rao was qualified to testify in the way presented by the

---

[2] During opening statements and closing arguments, Petitioner's trial counsel, with Petitioner's express consent, conceded that Petitioner was guilty of manslaughter. See Resp. Ex. J at 231, 241-43, 258-59; Resp. Ex. K at 628-43. The defense's trial strategy was to try to persuade the jury not to convict on first degree murder as charged. The strategy was ultimately successful in that regard.

State under both the <u>Frye</u> or <u>Daubert</u> standard. Moreover, the only testimony Dr. Rao gave which would relate to knife mark or fingernail mark comparisons was the following: there was a 2.2 centimeter-deep stab wound to the left side of the victim's chest from a single-edged weapon, that it was clear the victim was strangled manually due to the fingerprint markings on her neck, and that the Defendant's injuries to his face were not made by a knife as he alleged, but rather from fingernails.

No knife was found in order to compare with the wound. Thus, no knife mark comparison could truly be made to the wound or Defendant's facial injuries. More importantly, Dr. Rao's testimony was largely consistent with Defendant's own confessions of the murder; specifically, that the victim was stabbed with a small, folding knife in her left chest and that Defendant held her throat from the passenger seat of the car. Thus, the only inconsistency between Dr. Rao's conclusions and Defendant's allegations is whether the injuries to Defendant's face were from a knife or fingernails. There is no reasonable probability the outcome of the proceeding would have been different if Dr. Rao's conclusions on that point were challenged. This is particularly true in light of the testimony of Defendant's close family friend, Gregory Williams Jr., that on the night in question, Defendant had scratches on his face and when Williams asked Defendant how he got them, Defendant responded, "you know how these girls is." In light of the above, Defendant is not entitled to relief on this Ground.

Resp. Ex. R at 200-01 (footnote and internal record citations omitted).

Petitioner appealed, and the First District Court of Appeal per curiam affirmed the denial without issuing a written opinion. Resp. Ex. U. Petitioner filed a

8

motion for rehearing en banc, which was denied. Resp. Ex. V. The Mandate issued on July 8, 2019. Resp. Ex. W.

This Court addresses this claim in accordance with the deferential standard for federal court review of state court adjudications. Upon thorough review of the record, this Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented. Accordingly, Petitioner is not entitled to federal habeas relief on this claim.

**B. Ground Two**

According to Petitioner, his trial counsel was ineffective for failing to present evidence of the victim's violent character. Doc. 1 at 6. Petitioner argues that his "counsel failed to bring out and highlight the victim[']s propensity for violence . . . through legal authority expert witness or by a witness with personal knowledge" of the victim's character to "prove the victim was the aggressor." Id. (capitalization omitted); see Doc. 11 at 9 (arguing trial counsel was ineffective "for not presenting evidence of [the victim's] violent history towards" Petitioner).

Petitioner raised this claim in his Rule 3.850 proceeding. The state court denied the claim:

Defendant next alleges counsel was ineffective for failing to present evidence of the victim's violent character through specific instances of violence to show that the victim was likely the aggressor and Defendant had reasonable apprehension. Specifically, Defendant states counsel should have elicited testimony the victim was previously charged with Aggravated Battery with a Deadly Weapon in which the victim stabbed someone with a knife as well as testimony that Defendant previously got an injunction for protection against the victim in July 2010. Defendant states this evidence was crucial to support Defendant's assertions that the victim tried to stab him twice, prompting Defendant to protect himself.

It is clear from the record that counsel intended to bring out evidence of the victim's prior violence through Defendant's testimony. However, Defendant made the decision not to testify in this case. Such evidence would not be admissible through any other witness as the evidence would only have been admissible if it could be shown that Defendant was aware of the victim's history and if it tended to show Defendant had reasonable apprehension of the victim. See Smith v. State, 606 So. 2d 641, 643-43 (Fla. 1st DCA 1992). Therefore, counsel cannot be found to be ineffective in this regard.

Resp. Ex. R at 201-02 (internal record citations omitted). Petitioner appealed, and the First DCA per curiam affirmed the state court's denial of this claim without issuing a written opinion.

This Court addresses this claim in accordance with the deferential standard for federal court review of state court adjudications. The record supports the state court's decision. After the state rested and the trial court denied Petitioner's motion for judgment of acquittal, the trial court inquired of

Petitioner whether he wanted to testify on his own behalf. <u>See</u> Resp. Ex. K at 588-89. Petitioner advised the trial court that he wished to testify. <u>Id.</u> at 589. Petitioner's trial counsel then advised the court that they intended to proffer certain testimony, and the state intended on objecting based on its pretrial motion in limine.[3] <u>Id.</u> at 590-91. The trial court took a brief recess, and when the proceeding resumed, Petitioner had changed his mind and decided not to testify. <u>Id.</u> 591-93. Thus, no proffer was given.

Upon thorough review of the record, this Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented. Accordingly, Petitioner is not entitled to federal habeas relief on this claim.

**C. Ground Three**

Petitioner argues his trial counsel was ineffective for failing "to object to the court not instructing the jury o[n] the lesser included offense of manslaughter by culpable negligence by act." Doc. 1 at 8 (capitalization

---

[3] The state's motion in limine sought to exclude testimony or evidence relating to an incident where the victim stabbed someone and a temporary injunction Petitioner had previously filed against the victim. <u>See</u> Resp. Ex. F at 952-53.

omitted). Petitioner raised this claim in his Rule 3.850 proceeding, and the state

court denied it:

> Defendant asserts counsel acted deficiently by failing to object to "erroneous" jury instruction of the lesser included offense of manslaughter by act without giving the manslaughter by culpable negligence act.
>
> It is fundamental error to give an erroneous manslaughter by act instruction, stating that the defendant intended to cause the death of the victim, while failing to give the manslaughter by culpable negligence instruction. Haygood v. State, 109 So. 3d 735 (Fla. 2013). After the courts found the standard instruction erroneously informed the jury that manslaughter by act required the defendant to intend to kill the victim, the standard instructions were corrected to advise the jury that it simply must find that Defendant "intentionally committed an act or acts that caused the death of" the victim. Id. at 741; Fla. Std. Jury Instr. (Crim) 7.7.
>
> In the instant case, Defendant was given the corrected version of the manslaughter by act instruction. Thus, counsel was not ineffective for failing to object to a correct instruction. See Schoenwetter v. State, 46 So. 3d 535, 546 (Fla. 2010) (finding counsel cannot be deemed ineffective for failing to make a meritless objection). Therefore, Defendant is not entitled to relief on this Ground. See Strickland, 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one.").

Resp. Ex. R at 202-03 (internal record citations omitted). Petitioner appealed,

and the First DCA per curiam affirmed the state court's denial of this claim

without issuing a written opinion.

This Court addresses this claim in accordance with the deferential standard for federal court review of state court adjudications. Upon thorough review of the record, this Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented. Accordingly, Petitioner is not entitled to federal habeas relief on this claim.

### D. Ground Four

Petitioner claims that his trial counsel was ineffective for failing to investigate and discover impeachment evidence. Doc. 1 at 9. Specifically, he argues that Dr. Rao's testimony "was not competent d[u]e to mixed reviews from the state medical examiners commission," and her "history is under extremely high scrutiny and controversial." Id. (capitalization omitted).

Petitioner raised this claim in his Rule 3.850 proceeding, and the state court denied it:

> Defendant maintains counsel was ineffective for failing to investigate and discover impeachment evidence regarding the medical examiner presented by the State, Dr. Rao. Defendant states that the Mayor requested a state investigation on Dr. Rao, Dr. Rao received "mixed reviews" from the state medical examiner commission, and that Dr. Rao has a "history of controversy under heightened city scrutiny." Defendant also, however, contends that this

information was newly discovered evidence that could not have been discovered with due diligence by himself or counsel prior to trial. Defendant further claims that Dr. Rao was not competent to testify as an expert in this case. Defendant maintains that Dr. Rao's testimony is the only testimony that tended to show premeditation and, thus, this evidence would have likely produced a different result at trial.

Under rule 3.850(b)(1), a claim of newly discovered evidence requires that the facts on, which the claim is predicated were unknown to the movant or the movant's attorney and could not have been ascertained by the exercise of due diligence. Fla. R. Crim. P. 3.850(b)(1). To obtain a new trial based on newly discovered evidence, a defendant must demonstrate that:

> (1) the evidence was not known by the trial court, the party, or counsel at the time of trial, and it must appear that the defendant or defense counsel could not have known of it by the use of diligence; and (2) the newly discovered evidence is of such nature that it would probably produce an acquittal on retrial.

Hitchcock v. State, 991 So. 2d 337, 349 (Fla. 2008); see also Huffman v. State, 909 So. 2d 922 (Fla. 2d DCA 2005) (concluding that newly discovered evidence must also be admissible and it "must be of such a nature that it would probably produce an acquittal on retrial.").

First, this Court notes Defendant's allegations that this evidence could not be discovered with due diligence at the time of trial and that counsel was ineffective for failing to discover this evidence are contradictory and such allegations are not permitted. See Scott v. State, 46 So. 3d 529, 533 (Fla. 2009) (holding that a defendant "cannot simultaneously allege two competing theories").

14

Secondly, even upon review of the merits of each theory, this Court finds Defendant is not entitled to relief. Such impeachment evidence cannot be said to be of such a nature that would probably produce an acquittal on retrial, nor is there a reasonable probability the result of the proceeding would have been different had counsel discovered and presented this information. This Court finds such conclusion particularly compelling where, as here, the medical examiner's testimony is largely consistent with Defendant's own version of events, which are in turn corroborated by the physical evidence. Moreover, while Defendant states Dr. Rao's testimony was the only evidence of premeditation, this Court notes that the jury did not find premeditation sufficient to find Defendant guilty of First Degree Murder and instead found Defendant guilty of Second Degree Murder, which required no premeditation. Accordingly, Defendant is not entitled to relief on this Ground.

Resp. Ex. R at 203-05 (internal record citations omitted). Petitioner appealed, and the First DCA per curiam affirmed the state court's denial of this claim without issuing a written opinion.

This Court addresses this claim in accordance with the deferential standard for federal court review of state court adjudications. Upon thorough review of the record, this Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence

15

presented. Accordingly, Petitioner is not entitled to federal habeas relief on this claim.

**E. Ground Five**

Petitioner contends that trial counsel was ineffective for failing to call a "crucial witness and excluding Petitioner's proffer." Doc. 1 at 11. He asserts that he requested his counsel call Dennetta Wallace to corroborate Petitioner's story. Id.

Petitioner raised a similar claim in his Rule 3.850 proceeding. The state court denied the claim:

> Defendant contends counsel acted deficiently by failing to call Dennetta Wallace ("Wallace") and Kevin Jones and by failing to object to the trial court excluding Defendant's proffer of the victim's history of violence. Defendant states that but for counsel's alleged errors, there is a reasonable probability the result of the proceeding would have been different.
>
> The trial court did not deny Defendant the opportunity to proffer the victim's history of violence. Rather, counsel stated there would be a proffer when Defendant was choosing to testify as Defendant was to be the witness offering such evidence. However, before the time came for Defendant to testify, he changed the [sic] mind and decided against testifying. Counsel, thus, did not fail to call Defendant as a witness, but Defendant made the exclusive decision not to testify after being fully advised. Moreover, as Defendant was going to be the witness to testify as to the victim's history of violence, no proffer was necessary once Defendant chose not to testify. Moreover, as stated in Ground Two, Defendant was the only witness that could have testified regarding the victim's specific acts

of violence and his knowledge thereof. Counsel was, therefore, not deficient in either regard.

Defendant further asserts counsel should have called Wallace to testify that Defendant called her after the accident and to recall the details of that conversation to corroborate Defendant's testimony. Defendant contends Wallace would testify that Defendant stated the victim was still alive when the car crashed into the pole. Defendant further asserts Wallace would have testified that she offered to call the police but told Defendant to calm down and leave. Defendant suggests this testimony would have shown Defendant did not leave to avoid police. Such testimony from Wallace would have been inadmissible, self-serving hearsay. Moreover, such testimony would have conflicted with Defendant's statements to the police during his interview. Specifically, Defendant told the police that he could not call for help as he did not have a phone since the victim threw his cell phone out the car window and her phone was locked. Thus, testimony from Wallace that Defendant was able to make a phone call immediately after the crash would have conflicted with his prior statements, rather than corroborate his story. Thus, this Court finds counsel did not act deficiently in failing to call Wallace. Additionally, this Court finds there is no reasonable probability the result of the proceeding would have been different even had Wallace's purported testimony been presented. Defendant is, therefore, not entitled to relief on this Ground.

Resp. Ex. R at 205-06 (internal record citations omitted). Petitioner appealed, and the First DCA per curiam affirmed the state court's denial of this claim without issuing a written opinion.

This Court addresses this claim in accordance with the deferential standard for federal court review of state court adjudications. Upon thorough

review of the record, this Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented. Accordingly, Petitioner is not entitled to federal habeas relief on this claim.

### F. Ground Six

Petitioner alleges the trial court "abused its discretion in denying [his] claim of illegal sentence, life sentence exceed[s] the statutory maximum for first degree felony." Doc. 1 at 12. Respondents argue that this issue is not cognizable on federal habeas review because it presents an issue of state law. See Doc. 10 at 40-42. This Court agrees.

"In the area of state sentencing guidelines in particular, [the Eleventh Circuit] consistently ha[s] held that federal courts cannot review a state's alleged failure to adhere to its own sentencing procedures. This limitation on federal habeas review is of equal force when a petition, which actually involves state law issues, is couched in terms of equal protection and due process." Branan v. Booth, 861 F.2d 1507, 1508 (11th Cir. 1988) (quotations and citations omitted). Because this claim is purely an issue of state law, it is not cognizable on federal habeas review. As such, it is due to be denied.

Even assuming this claim is cognizable in a federal habeas petition, this Court would defer to the state court's ruling. Indeed, Petitioner raised this claim in his Rule 3.850 proceeding, and the state court denied it:

> Defendant suggests the trial court erred in imposing an enhancement on his first degree felony punishable by life without a jury finding to allow enhancement.
>
> To the extent Defendant raises this ground as trial court error, it is not cognizable. Grimsley v. Jones, 215 So. 3d 353, 354 (Fla. 2016) ("[A]llegations of trial court error are not cognizable by motion under rule 3.850.") (citations omitted). However, claims of illegal sentences may be brought at any time through a Rule 3.850 motion. Fla. R. Crim. P. 3.850(a). Examining this ground as a claim of illegal sentence, this Court finds the Ground to be without merit. Second Degree Murder is a first degree felony punishable by life. §§ 782.04(2), 775.082, Fla. Stat. (2010). Unlike Defendant's assertions, no enhancement is necessary to permit a life sentence for such an offense. Accordingly, this Court finds Defendant['s] sentence to be legal and finds Defendant is not entitled to relief on this Ground.

Resp. Ex. R at 206-07. Petitioner appealed, and the First DCA per curiam affirmed the state court's denial of this claim without issuing a written opinion.

Upon thorough review of the record, this Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light

of the evidence presented. Accordingly, Petitioner is not entitled to federal habeas relief on this claim.

### G. Ground "Eight"[4]

Petitioner claims that his trial counsel was ineffective by allowing or not objecting to the redacted videotaped interview that was played for the jury. Doc. 1 at 14. He asserts that he told his counsel to object to the redacted version being played because it "definitely helped the state[']s case." Id. (capitalization omitted).

Petitioner raised this claim in his Rule 3.850 proceeding. The state court denied the claim:

> Defendant alleges counsel was ineffective for failing to object to the admission of Defendant's videotaped custodial interview during with [sic] the police office[r] repeatedly expressed his personal opinion about Defendant's guilt.

> The State entered portions of Defendant's videotaped interview during its case in chief. While the defense discussed entering the entirety of the interview under the rule of completeness, the State noted that the remaining portions may violate the dictates of Jackson

---

[4] Petitioner did not include a Ground "Seven" in his Petition. The Court provided him with an opportunity to amend his Petition to include a ground seven if he intended to do so. The Court advised Petitioner that if he did not file an amended petition, the Court would presume the error was merely typographical and that he intended to raise a total of eight claims. See Order (Doc. 2). Petitioner did not file an amended petition. Thus, the Court refers to each Ground as numbered by the parties (which excludes a ground seven).

v. State, 107 So. 3d 328 (Fla. 2012).[5] The defense, however, never introduced the entire interrogation and, thus, the only portions played for the jury were those presented in the State's case in chief. These portions of the interview played for the jury were devoid of any personal expressions of guilt by the detectives. Therefore, defense counsel cannot be deemed ineffective for failing to make such a meritless objection. See Schoenwetter, 46 So. 3d at 546. Defendant is, thus, not entitled to relief on this Ground.

Resp. Ex. R at 208 (internal record citations omitted). Petitioner appealed, and the First DCA per curiam affirmed the state court's denial of this claim without issuing a written opinion.

This Court addresses this claim in accordance with the deferential standard for federal court review of state court adjudications. Upon thorough review of the record, this Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented. Accordingly, Petitioner is not entitled to federal habeas relief on this claim.

---

[5] Jackson, 107 So.3d at 339-40 (recognizing that "[g]enerally, a witness' opinion as to the credibility, guilt, or innocence of the accused is inadmissible," and "it is especially troublesome when a jury is repeatedly exposed to an interrogating officer's opinion regarding the guilt or innocence of the accused").

**H. Ground Nine**

Petitioner claims that "the trial court abused its discretion in denying [his] motion for appointment of a forensic pathologist." Doc. 1 at 15. Petitioner raised this claim pretrial, and the trial court conducted a hearing on the motion before denying it. <u>See</u> Resp. Ex. E at 707-10; Resp. Ex. H at 1321-46.[6] In doing so, the trial court reviewed in detail the parties' arguments, the medical examiner's report, and Petitioner's interview with the police after the murder. <u>See</u> Resp. Ex. H at 1342-45.

With help from appellate counsel, Petitioner raised this claim on direct appeal. <u>See</u> Resp. Ex. M. He argued that the appointment of a forensic pathologist was necessary to challenge the cause of death and educate counsel on forensic pathology, which would have allowed Petitioner to adequately challenge the competency of the medical examiner's testimony and effectively cross-examine her. <u>See</u> <u>id.</u> He argued that with help from a forensic pathologist, he would have been able to "flesh out a theory of self-defense in addition to his theory of manslaughter." <u>Id.</u> at 13.

The state filed an answer brief arguing that Petitioner failed to demonstrate a particularized need for such an expert, he provided no evidence that the autopsy results were erroneous or subject to interpretation, and he

---

[6] At that time, Petitioner had chosen to proceed pro se. His stand-by counsel was present at the hearing.

named no such expert who would testify that the sole cause of death was stabbing. <u>See</u> Resp. Ex. N. The state further argued that Petitioner acknowledged during his police interview that he both stabbed and strangled the victim, but his theory was that he did so accidentally or out of self-defense. <u>See</u> <u>id.</u> Thus, according to the state, Petitioner was responsible for the victim's death whether she died from the stab wound or the strangulation, and an expert's testimony that the victim died solely from the stab wound would not assist in proving Petitioner's defense theory. <u>See</u> <u>id.</u> The First DCA per curiam affirmed Petitioner's conviction and sentence without issuing a written opinion. Resp. Ex. O.[7]

Assuming Petitioner has presented an exhausted federal claim, this Court addresses this claim in accordance with the deferential standard for federal court review of state court adjudications and finds that the record supports the state court's conclusion. Upon thorough review of the record, this Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented.

---

[7] According to the state court's docket, Petitioner also raised this issue on August 8 and 12, 2014, which was after his direct appeal concluded. The state court denied the claim on August 28, 2014.

Petitioner's trial was not rendered fundamentally unfair by the denial of his request for an expert to challenge the cause of death. Petitioner is not entitled to federal habeas relief on this claim.

Accordingly, it is

**ORDERED**:

1.    The Petition (Doc. 1) is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**.

2.    If Petitioner appeals, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.[8]

---

[8] The Court should issue a certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Here, after consideration of the record as a whole, the Court will deny a certificate of appealability.

3.     The **Clerk** shall enter judgment dismissing this case with prejudice, terminate any pending motions, and close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this 16th day of August, 2022.



TIMOTHY J. CORRIGAN
United States District Judge

JAX-3 8/12
c:
Kevin Jones, #J42734
Counsel of Record